**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Yvonne Curatolo, | ) | **CASE NO. 5:10 CV 607** |
| | ) | |
| Plaintiff, | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| Vs. | ) | |
| | ) | |
| Allstate Insurance Company, | ) | **Memorandum of Opinion and Order** |
| | ) | |
| Defendant. | ) | |

**INTRODUCTION**

This matter is before the Court upon Defendant Allstate Insurance Company's Motion for

Summary Judgment (Doc. 27).  This is an insurance coverage dispute.  For the reasons that

follow, the motion is GRANTED in PART and DENIED in PART.  Summary judgment is

GRANTED as to plaintiff's bad faith claim and DENIED as to the claim for coverage.

**FACTS**

Plaintiff, Yvonne Curatolo, filed this lawsuit on behalf of herself and her business, Knox

Hearing Aid Services ("Knox Hearing"), against defendants, Allstate Insurance Company

("Allstate"), Victoria Hoenigman, Lee Paulson, and Chris Paulson.  On May 13, 2010, the Court

1

dismissed the individual defendants. Thereafter, plaintiff filed an amended complaint against Allstate.

Plaintiff sought coverage for five losses allegedly suffered over a two-year period. The first claim arises out an alleged theft at plaintiff's residence on April 15, 2005 ("home theft claim"). The second claim arises out of an alleged theft at Knox Hearing on November 14, 2006 ("2006 theft claim"). Thereafter, plaintiff sought coverage for a second theft at Knox Hearing ("2007 theft claim"), as well as damage to plaintiff's motor vehicle ("vehicle claim"). The events giving rise to the 2007 theft claim and the vehicle claim occurred on January 8, 2007. Plaintiff also filed a claim for damage resulting from a sewer backup at Knox Hearing on March 2, 2007 ("sewer backup claim").

Defendant denied coverage for the home theft claim on January 24, 2007, on the grounds that plaintiff did not give notice of the loss until October 18, 2006, more than a year and a half after the alleged loss occurred. Defendant denied the 2006 theft claim, the 2007 theft claim, and the sewer backup claim on the basis of concealment, fraud and misrepresentation, failure to provide prompt notice of loss, and failure to mitigate damage. In addition, defendant denied the vehicle claim on the basis of late notice and fraud or misrepresentation.

Thereafter, on June 14, 2008, plaintiff filed a lawsuit against defendant. Plaintiff voluntarily dismissed the action without prejudice. On February 17, 2010, plaintiff refiled the action in state court. Defendant timely removed the matter to this Court. The amended complaint contains four claims for relief. Count one is a claim for breach of contract. Count two seeks a declaratory judgment. Count three is a claim for bad faith and count four alleges intentional infliction of emotional distress. Plaintiff voluntarily dismissed count four.

2

Defendant moves for summary judgment and plaintiff opposes the motion.

**STANDARD OF REVIEW**

Rule 56(a) of the Federal Rules of Civil Procedure, as amended on December 1, 2010, provides in relevant part that:

> A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed .R.Civ.P. 56(a).

Rule 56(e) provides in relevant part that "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may ... consider the fact undisputed for purposes of the motion ... [and] grant summary judgment if the motion and supporting materials—including the facts considered undisputed-show that the movant is entitled to it." Fed.R.Civ.P. 56(e).

Although Congress amended the summary judgment rule, the "standard for granting summary judgment remain unchanged" and the amendment "will not affect continuing development of the decisional law construing and applying" the standard. See, Fed.R.Civ.P. 56, Committee Notes at 31.

Accordingly, summary judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (citing Fed. R. Civ. P. 56(c)); *see also LaPointe v. UAW, Local 600*, 8 F.3d 376, 378 (6th Cir. 1993). The burden of showing the absence of any such genuine issues of material facts rests with the moving party:

> [A] party seeking summary judgment always bears the initial

3

> responsibility of informing the district court of the basis for its
> motion, and identifying those portions of "the pleadings,
> depositions, answers to interrogatories, and admissions on file,
> together with affidavits," if any, which it believes demonstrates the
> absence of a genuine issue of material fact.

*Celotex*, 477 U.S. at 323 (citing Fed. R. Civ. P. 56(c)). A fact is "material only if its resolution will affect the outcome of the lawsuit." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmoving party. The court must afford all reasonable inferences and construe the evidence in the light most favorable to the nonmoving party. *Cox v. Kentucky Dep't. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) (citation omitted); *see also United States v. Hodges X-Ray, Inc.,* 759 F.2d 557, 562 (6th Cir. 1985). However, the nonmoving party may not simply rely on its pleading, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox*, 53 F.3d at 150.

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of his case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322). Accordingly, "the mere existence of a scintilla of evidence in support of plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (quoting *Anderson*, 477 U.S. at 52 (1986)). Moreover, if the evidence is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Anderson*, 477 U.S. at 249-50 (citation omitted).

## **ANALYSIS**

The Court will address each claim in turn.

4

1.      The home theft claim

Defendant argues that plaintiff may not recover for the home theft claim because she failed to file suit within the policy's one-year limitations provision.  Specifically, defendant points out that plaintiff failed to notify defendant of the loss for over a year and a half, and then did not file a lawsuit until over three years after the date of loss.  In response, plaintiff concedes that the policy's one-year limitations provision bars her claim.  Accordingly, defendant is entitled to summary judgment.

2.      The vehicle claim

On or about January 8, 2007, a theft allegedly occurred at Knox Hearing.  Plaintiff claims that during the theft, her vehicle incurred damage.  According to defendant, plaintiff did not submit this claim, which fell under her automobile policy, until June 16, 2008.  According to plaintiff, she reported the vehicle damage along with her theft claim and was unaware that she needed to file a separate claim.

Defendant ultimately denied the claim on the grounds of fraud and misrepresentation.  In addition, the denial letter indicates that the claim is barred by the policy's one-year limitations period.

Defendant argues that it properly denied coverage for this claim because plaintiff failed to adequately support her loss claim.  Defendant instructed plaintiff to complete and return a sworn proof of loss statement along with supporting documents, an authorization form, and a nonwaiver agreement.  (ECF 29 at Ex. 5).  The authorization form would have permitted defendant to seek invoices for repairs done to the vehicle directly from service providers.  *Id.* Defendant points out that plaintiff indicated that she had already repaired the vehicle prior to

5

filing any insurance claim.  In addition, defendant argues that plaintiff refused to submit to a recorded statement regarding the damage to the vehicle.

On the other hand, plaintiff argues that she believed the vehicle claim was reported as part of the theft claims.  According to plaintiff, defendant knew of the damage to the vehicle. Specifically, defendant questioned plaintiff about the damage during her March 13, 2007 recorded statement.  Thus, plaintiff believed defendant was adjusting the claims together.[1]  In addition, plaintiff notes that she did in fact submit to a recorded statement regarding the damage to the vehicle.  According to plaintiff, defendant itself cites to the recorded statement as proof that plaintiff had the damage repaired.  Thus, plaintiff claims it is disingenuous to argue that plaintiff failed to submit to a recorded statement.  In addition, plaintiff points out that, although defendant knew of the damage to the vehicle, defendant did not request that plaintiff fill out the paperwork until nearly a year and a half after defendant knew of the loss.  Plaintiff further provides her own affidavit in which she avers that she did return the requested paperwork to defendant.  She provides a copy of an email she sent to her then-attorney in which she informs him that she delivered the paperwork.  Plaintiff further avers that she recalls having the handwritten proof of loss forms notarized at a Key Bank.  In addition, plaintiff indicates that she discussed the issue of the receipts for the repaired damage with defendant's field adjuster. Plaintiff informed defendant that she misplaced the receipts and the field adjustor indicated that he could obtain the receipts directly from the service providers.  In reply, defendant notes that

_____

[1]     In the reply brief, defendant disputes whether plaintiff actually believed the claims were being adjusted together.  Defendant provides evidence suggesting that plaintiff knew that the auto claim is separate from the other claims.

6

the plaintiff's explanation is not credible because the date of the email to her then-attorney is the same as the date of the letter sent by defendant. Since defendant mailed the letter by certified mail, plaintiff could not possibly reply to a letter she had yet to receive.

Upon review, the Court finds that a genuine issue of material fact exists with regard to coverage for the vehicle claim. As an initial matter, the Court notes that defendant denied the claim based on fraud and misrepresentation, yet now cites to entirely different policy provisions in support of its position that it properly denied the claim[2]. Regardless, taking the facts in the light most favorable to plaintiff, the Court finds that reasonable minds could differ as to whether coverage exists. According to plaintiff, she provided the requested documentation to defendant. She further indicates that defendant informed her that it would obtain receipts supporting the damage amount directly from the repair shop. While defendant disputes these facts and argues that plaintiff's statement is not credible given the date of the letter, this Court may not make credibility determinations at this stage in the litigation. In addition, as defendant points out, the claim was valued at less than $300. Given that defendant admits plaintiff provided a recorded statement surrounding the damage, the Court cannot say that plaintiff breached the policy by not providing what amounts to a second recorded statement about the damage. Accordingly, accepting plaintiff's version of the facts, the Court finds that summary judgment with regard to the vehicle claim must be denied.

3.      The 2006 and 2007 theft claims and the sewer backup claim

On January 12, 2007, plaintiff reported two theft losses. The first occurred two months

---

[2]     In its motion, defendant argues that the claim was properly denied based on the written proof of loss and cooperation provisions.

7

prior to January 12, 2007, and the second occurred on January 7 or 8, 2007.  On February 23, 2007, a sewer backup occurred in the basement of Knox Hearing.  Plaintiff reported this claim on March 2, 2007.

A.  Concealment and Fraud

Defendant denied the losses on the basis of concealment or misrepresentation.  The policy provides as follows,

> This policy is void if you intentionally conceal or misrepresent any material facts or circumstances, before or after a loss.

General Conditions (6).

All of these losses were investigated by Victoria Hoenigman, an employee of defendant.  In support of its motion for summary judgment, defendant relies on Hoenigman's affidavit.  Before addressing the coverage claim, the Court must first address the affidavit provided by Hoenigman.  In its brief, defendant indicates as follows,

> The evidence disclosed by its investigation and which defendant considered in denying the claim is, in part,  "summarized" in the Affidavit of Victoria Hoenigman in Support of Defendant's Motion for Partial Summary Judgment, which is being separately filed herewith.  Hoenigman Aff. at ¶¶ 15-54.... The incidents of concealment and misrepresentations are set forth in Ms. Hoenigman's affidavit.  "Honeigman Aff. at ¶ 55 (1-40))."

(ECF 27 at p. 8).

In making this statement, defendant refers the Court to a 63 page affidavit, which is a self-described "summary" of the evidence.  Much of what is contained in the affidavit is inadmissible because it is not based on Hoenigman's personal knowledge.  For example, Hoenigman "summarizes" the recorded statements taken from plaintiff and other witnesses.  In providing the summaries, however, defendant fails to cite to the actual transcript pages.  Many of

8

the other paragraphs also fail to satisfy the personal knowledge requirement.  For example,

Hoenigman avers as follows,

> On January 15, 2008, Mr. Chipps, on behalf of Allstate, obtained a statement from Linda Sharp.  Ms. Sharp refused to have her statement recorded.  Instead, Mr. Chipps summarized her statement in his report date January 27, 2008, a true and accurate copy of which is attached as Exhibit 17, and information provided included the following....

Hoenigman Aff. ¶ 49.

Regardless of the evidentiary issues, the vast majority of the alleged misrepresentations set forth in the affidavit are not discussed or even mentioned in passing in defendant's brief.  For example, Paragraph 55 of the affidavit contains 40 subparts, consisting of 12 single-spaced pages.  Subparagraph 39 contains eleven instances of allegedly fraudulent submissions.   One of those subparts, in turn, is broken down into 5 additional subparts, which are purported misstatements contained on one inventory sheet.  In its reply brief, defendant faults plaintiff for not addressing each instance of alleged misconduct.[3]  This Court, however, concludes that only those instances of fraud which defendant specifically raised in the briefing will be considered.

---

[3]     For example, in one of the multi-level subparts, defendant claims that "Bates ALL 0018" is a fraudulent invoice.  Defendant also argues that Bates "ALL 00084" is an invoice that was both falsified as to the date and as to the "total purchases."  These documents, however, are not identified in a manner such that the Court could locate them.  In response to the affidavit, plaintiff attempts to address this issue in her brief by stating that she did not alter the date.  Rather, she intended to clarify the date because the writing was not clear.  In its reply brief, defendant indicates that even if the Court accepts this explanation, "defendant's *argument* went further than this."  This Court disagrees.  Defendant made no argument whatsoever regarding this receipt.  In fact, there is no discussion about the receipt in the brief at all.  Accordingly, defendant cannot fault plaintiff for failing to address an "argument" that was simply not explicitly made.

1.     "Other business"

Defendant argues that plaintiff testified that she did not operate a business other than Knox Hearing, when in fact she operated a booth at the I-76 antique mall.  Defendant further claims that items sold at the mall were "similar" to those allegedly stolen in the alleged losses.

As an initial matter, the Court notes that the testimony cited by defendant does not directly support its position that plaintiff operated no business other than Knox Hearing. Although plaintiff indicated in her recorded statement that she operated no other business, in the EUO pages cited by defendant, plaintiff testified as follows:

Q.     Other than Knox Hearing, have you operated any other businesses?

A.     Yes.

Q.     Tell me about the other businesses.

A.     Obsessions, a retail store at Canton Center Mall.

Q.     Before I ask you about Obsessions, were there any other businesses other than Obsessions and Knox that you've owned, affiliated, or operated?

A.     Do you mean, like other hearing aid offices that I bought?  Because I did buy other hearing aid offices.

Q.     We'll mention those.  What other hearing aid offices?

A.     Benchmark.  And the reason I mention that is because I also took over their lease for awhile....

(EUO at 39-40).

It appears that defendant is not arguing that plaintiff failed to indicate that she operated other businesses.  Rather, defendant is claiming that plaintiff failed to disclose her booth at the I-76 antique mall.  Defendant points out that plaintiff's expert testified that it was possible that the booth at the I-76 mall was a business.  Defendant also offers records from the I-76 mall

10

purporting to establish that plaintiff sold items at the booth from 2001 through 2008, without a "five year" break.  Plaintiff, however, avers that she viewed the booth at the antique mall as a hobby and that she never registered with the Ohio Secretary of State or filed a separate tax return.  She did not operate the booth for monetary gain and any money she may have collected was used for Knox Hearing.  In addition, Knox Hearing money was used to pay the booth rental. Regardless, plaintiff testified that she went five years "between times using the booth.[4]"  It also does not appear that plaintiff derived any considerable profit from the I-76 booth.  As such, her view of the I-76 antique mall booth as a "hobby" might be reasonable.

In order to deny the claim based on the fraud and misrepresentation provision, defendant must establish that the misrepresentation was "material."  It appears that defendant attempts to do so by showing that plaintiff may have sold some of the items at the I-76 booth that she claimed were stolen.  Defendant, however, fails to offer sufficient factual support for its contention that plaintiff sold items at the antique mall similar to those claimed in the loss.  In support of its contention, defendant cites Hoenigman's affidavit, which provides,

> On April 28, 2008, Mr. Chipps went to the I-76 Antique Mall where he was shown Curatolo's 8 X 10 foot sales area.  Mr. Chipps then spoke with the manager who told him that Curatolo had a booth there since 2002 and had a second 8 X 10 foot sales area and 3-4 white glass front display cases, photographs of which are attached hereto as Exhibit 21.

> As set forth above, Hoenigman's affidavit is not based on personal knowledge.

---

[4]  In support of its position, defendant cites the recorded statement of Ron Knutty, Jr., who stated that plaintiff operated only Knox Hearing.  Knutty was then asked whether she operated a business with "antiques and pictures."  Knutty responded, "Ya.  Ya, ya, she does have some, ya."  Knutty further testified, however, that it has been a few *years* since he was asked to help her "move stuff" related to the antique business.

11

Moreover, "Mr. Chipps's" statements about what the manager said are not admissible as provided.  Further, the Court *could not possibly* conclude, based simply on a review of the photographs attached to the affidavit, that the items in the photographs are the same or similar to those claimed in the losses.  Accordingly, the Court cannot say that defendant is entitled to summary judgment.

      2.      Duplicate copier receipt/Harlequin with a Cat

      Defendant further argues that plaintiff submitted a receipt for a copier, even though she submitted the same receipt as proof of loss in a previous claim involving a roof collapse.[5] According to plaintiff's affidavit, she often submitted receipts in order to prove the value of the item, as opposed to the ownership of the item.[6]  Plaintiff claims that she often owned many of the same item, but did not have receipts for each item purchased.  Thus, if she had one receipt, but four copies, she would submit the receipt fours time in order to establish how much each of the four items is worth.

    [5]    Defendant claims that plaintiff said she was justified in submitting the wrong receipt in the prior claim because "she was not under oath."  Plaintiff indicates that, although she did "reference being under oath," she did so because she felt "cornered and used a poor choice of words."

    [6]    In its reply, defendant asks the Court to strike plaintiff's affidavit because it directly contradicts the testimony she provided during her Examination Under Oath ("EUO").  Defendant cites the Court to "volumes 1-3" of the EUO and states that plaintiff "consistently testified the receipts showed ownership of the items listed in her claims."  Defendant does not provide the Court with any citations to any particular testimony, even though the EUO is well over 500 pages long.  The Court finds that defendant, as the moving party, failed to establish that the affidavit should be stricken.  Defendant fails to identify any particular instance in which plaintiff's affidavit contradicts her testimony.

Defendant also points out that plaintiff submitted a detailed receipt for a $60 painting entitled "Harlequin with a Cat" in connection with a sewer backup claim filed with defendant in 2000. According to defendant, plaintiff also submitted a claim for the same painting after an alleged theft from her residence in 2005. Defendant further argues that plaintiff submitted a claim for the same painting on one other occasion. She further submitted the claim a fourth time– in connection with the 2007 theft claim. Defendant offers two copies of the same receipt. The receipt is identical, with the exception that a date is inserted on one of the copies. In response, plaintiff avers that she has multiple copies of Harlequin with a Cat. According to plaintiff, she intended to submit the loss in two claims. If she actually submitted it four times, then she made an "honest mistake."

Upon review, the Court finds that reasonable minds could differ as to whether plaintiff intentionally submitted false receipts or attempted to recover multiple times for the same item. On the one hand, defendant shows that the same receipts were in fact submitted in response to different claims. On the other hand, plaintiff avers that she never intended to recover for the same item. Rather, she had multiple copies of the same item and submitted the receipts in an attempt to establish the value (as opposed to the ownership) of an item. Although the Court questions plaintiff's credibility, such determinations are reserved for the jury.

3.      Floor paint

Defendant further supports its denial on the grounds that plaintiff falsely claimed damage to floor paint in the course of the sewer backup claim. According to defendant, plaintiff made a prior claim for sewer backup in 2003, and the photographs taken during the adjusting of that claim show that marine paint had peeled. Defendant claims that the damage was preexisting and

13

thus plaintiff falsely submitted a claim for the damage again in 2007.  In response, plaintiff

provides her own affidavit, in which she avers that the damage done by the 2003 sewer backup is

different than that done in the 2007 sewer backup.  She states that after the 2003 backup she

repainted and recarpted.  In its reply brief, defendant admits that this affidavit testimony creates

a genuine issue of material fact with regard to this aspect of the case.

      4.          Nikken inventory showcase

      Defendant points out that on an itemized list of claimed losses, plaintiff lists the name of

the item as "for Nikken inventory showcase."  She submitted a receipt from Bed, Bath, and

Beyond showing the purchase of a mattress pad, bath salts, and other related items.  Defendant

argues that plaintiff submitted a claim for a "showcase," but the receipt does not support the

purchase of a showcase.  On the other hand, plaintiff argues that she never intended to recover

for an actual showcase.  Rather, she specifically indicated that the loss was "for inventory" used

to make a showcase display of Nikken products.  Nikken is a company that manufactures health

and wellness products that promote sleep and relaxation.  The mattress pad, bath salts, and other

items were to be used to make up the showcase.   In response, defendant argues that plaintiff had

an opportunity to correct any misunderstanding during her testimony, but she failed to do so.

Defendant cites to the following testimony,

> Q.     ... Just sometimes people put them down, you know, to keep track for their own--
>
> A.     Oh, Okay.
>
> Q.     -- expenses.  That's why I'm asking.  Next is two pair of curtains, unused, still in bag.
>
> A.     Is that these from Bed, Bath & Beyond or - -
>
> Q.     The next says, -- oh, yeah, for inventory showcase - - I'm sorry --$197.79.

Actually, if you want to --
And the Bed, Bath & Beyond receipt you brought in I've marked as 1-M, correct?

A.      Yes.

The Court finds that, taken as a whole, reasonable minds could differ as to whether plaintiff fraudulently submitted a claim for a "showcase" as opposed to "inventory" to be used in a showcase.  The testimony relied on by defendant does not establish that plaintiff, as a matter of law, fraudulently attempted to recover for a showcase as opposed to the inventory in a showcase.


5.      "Altered receipts"

In defendant's brief, defendant argues that plaintiff "submitted a number of receipts that had been altered."  Defendant does not discuss the particulars of any receipt or describe in its brief any additional detail regarding the allegedly "altered" receipts.  In support of this statement, defendant cites to paragraph 55(36)(ii-x) of Hoenigman's affidavit.  No such paragraph exists.  To the extent defendant intended to cite to paragraph 55(39)(ii-x), the Court notes that these paragraphs simply describe various invoices and defendant's belief that they are fraudulent.[7]  For example, subparagraph iv provides,

---

[7]      Again, defendant fails to present any argument or analysis specific to each claim.  Rather, defendant simply puts one statement in its brief and then refers the Court to a summary affidavit, which in turn refers to a number of documents.  There is no context, however, for the documents or testimony, or evidence as to the manner in which the documents were submitted, or which claim the documents were submitted for, or any argument as to why the submissions were fraudulent or improper.  The Court is careful to note that it makes no representation concerning whether the documents are fraudulent, especially given that some documents appear altered in some instances.  Rather, the Court simply notes that without some context as to the submission process or more

15

Bates ALL 00093 – EUO Ex.8B and Bates ALL 0094– EUO Ex.8C relate to Ross
Galleries purchases. Bates ALL 00093 includes two invoices and Bates ALL 00094 is a
third Ross Galleries invoice. These are the same invoices as contained in EUO Ex. 14C3,
Bates ALL 00237 which is listed on personal property inventory sheet, EUO Ex. 14, line
4, Bates ALL 00234 which was submitted as being stolen in the January 2007 theft.
Thus, Plaintiffs [sic] claim that the same items were stolen in November 2006 and
January 2007.

Defendant provides no context for these invoices, and fails to support its conclusion with

any evidence.[8] In response, plaintiff argues that defendant fails to show that the documents were

submitted in two claims. She avers that she never intended to mislead defendant or submit

multiple copies for more than one claim. Rather, according to plaintiff, she gathered hundreds of

pages of documents and was providing receipts and documents for numerous claims at the same

time. She avers that to the extent she submitted the wrong receipt or submitted a receipt on

multiple inventory sheets, she made "honest mistakes." In reply, defendant argues that it is

document "ALL 0086, EUO Ex. 8" that establishes that the paintings were submitted in the

November 2006 theft loss. As an initial matter, the Court notes that defendant did not properly

identify its exhibits. For example, there are two documents marked "EUO Ex. 8." The first

exhibit located by the Court had nothing to do with Ross Galleries. Nor did it contain a bates

label. After sifting through the box of documents provided by defendant, the Court located a

second EUO Ex. 8. This document, however, does not indicate which claim is involved. In fact,

both inventory sheets are dated May 2007. Thus, upon review, the most the Court could

---

detail regarding each submission, the Court cannot say that, as a
matter of law, the receipts themselves demonstrate that plaintiff
acted fraudulently.

[8]     For the same reasons set forth earlier in this Opinion, the Court
will not consider the altered receipts not specifically raised in
defendant's motion and memorandum in support.

16

conclude is that multiple copies of the same invoice exist.  There is simply no evidence or indication that the invoices were submitted with regard to the November 2006 claim and the January 2007 claim.  While the evidence provided by defendant may call into question plaintiff's credibility, the Court is not permitted to make credibility determinations at this stage in the litigation.  The Court cannot say, based on defendant's submissions, that plaintiff engaged in fraud as a matter of law.

      6.        Clay lawsuit

In a similar vein, defendant argues that plaintiff filed a lawsuit against her former landlord after he evicted her from the Barn on Butterbridge Road.  According to defendant, plaintiff lost at trial.  Defendant argues that plaintiff is seeking coverage for at least 20 of the same items that she alleged were damaged by her former landlord.   In support of its position, defendant cites to paragraph 40 of Hoenigman's affidavit.  That paragraph, however, has nothing to do with the lawsuit against the former landlord.   Rather, it discusses defendant's decision to hire a forensic accounting firm.  In paragraph 55(40), Hoenigman avers that plaintiff submitted at least 20 items in the lawsuit against her landlord that are identical to those submitted here.  As plaintiff points out, however, defendant fails to provide the Court with the documents or any manner in which to verify whether the documents are the same.   Regardless, plaintiff essentially avers that there was a "mixup" with the documentation and that she and her assistant were working on both "claims" at the same time.  Based on this statement, together with the lack of ability on the part of the Court to verify what documents were submitted in the litigation with the landlord, the Court finds that questions of fact remain as to whether plaintiff engaged in fraud.

Overall analysis (fraud exclusion)

17

Defendant argues that the aforementioned facts taken together require summary judgment in its favor.  According to defendant, the policy prevents an insured from engaging in concealment and fraud.  Defendant argues that "the evidence of concealment and material misrepresentations set forth in Ms. Hoenigman's affidavit are so persuasive and compelling, indisputably supporting summary judgment on [the insurance claims.]"  On the other hand, plaintiff argues that genuine issues of material fact prevent summary judgment.  Specifically, plaintiff argues that whether fraud exists is a question of intent, which is inappropriate for resolution on summary judgment.  Plaintiff relies on her affidavit in which she essentially avers that she was overwhelmed by the process and submitted many documents at the request of defendant.  In the event she submitted a receipt more than once it was either by mistake or done in an effort to establish value.

Upon review, the Court finds that summary judgment must be denied.  As set forth above, the evidence relied on by defendant does not conclusively establish that plaintiff acted fraudulently.  Rather, many of the factual assertions made by defendant are either not supported by the evidence cited, or are made is such a summary fashion that the Court cannot independently analyze the statement without more context.  Regardless, plaintiff correctly notes that whether someone acted fraudulently is generally a question of fact and, given the specific facts of this case, the Court cannot say that plaintiff acted fraudulently as a matter of law.  Accordingly, summary judgment is denied with respect to the fraud exclusion as it pertains to the 2006 and 2007 theft claims and the sewer backup claim.

B.      Financial records

Defendant also argues that it properly denied plaintiff's claims because plaintiff failed to

18

provide financial records.  General Condition 9 requires that plaintiff allow defendant to "examine [the] books and records at any time while [the] policy is in effect."

Defendant argues that, although plaintiff provided a number of financial documents related to the pre-2006 time period, plaintiff failed to provide more current financial information. As such, defendant hired a forensic accounting firm to analyze the financial information in its possession.  The report shows that, although defendant possessed a wealth of financial information related to Knox Hearing for the pre-2006 time period, the accounting firm could not do a more thorough evaluation because plaintiff "failed to produce documents that would allow [the firm] to evaluate the financial standing of Knox Hearing after 2005."  (Hoeningman Aff. ¶ 41r.)  In addition, defendant provides plaintiff's written responses to defendant's requests for financial documents.  In the requests, plaintiff indicates that she will provide such things as personal and business bank statements, original utility bills, loan documents, and leases. Plaintiff never provided these documents.  In response, plaintiff offers her own affidavit in which she avers that she produced over 1,000 pages of financial documents to defendant.  She further indicates that many of the documents requested by defendant do not exist.  Plaintiff indicates that she provided defendant with every financial document in her possession.

Upon review, the Court finds that reasonable minds could differ as to whether plaintiff breached the insurance policy provision set forth as General Condition 9.  Reasonable minds could differ as to whether plaintiff's alleged failure to turn over some financial documents, which according to plaintiff do not exist, amounts to a breach of the policy.

Having concluded that questions of fact exist regarding plaintiff's breach of General Condition 9, the Court finds that summary judgment is not warranted.

19

4.    Bad faith

Under Ohio law, "an insurer has the duty to act in good faith in the handling and payment of the claims of its insured." *Hoskins v. Aetna Life Ins. Co.*, 452 N.E.2d 1315, syllabus ¶ 1 (Ohio 1983).  "An insurer fails to exercise good faith in the processing of a claim of its insured where its refusal to pay the claim is not predicated upon circumstances that furnish reasonable justification therefor."  *Zoppo v. Homestead Ins. Co.*, 644 N.E.2d 397, syllabus ¶ 1 (Ohio 1994). The inquiry under this standard is whether "the decision to deny benefits was arbitrary or capricious, and there existed a reasonable justification for the denial," not whether the insurance company's decision to deny benefits was correct.  *Rauh Rubber, Inc. v. Berkshire Life Ins. Co.*, 1999 WL 1253062 (6th Cir. Dec. 16, 1999) (citing *Thomas v. Allstate Ins. Co.*, 974 F.2d 706, 711 (6th Cir.1992)); *see also Hart v. Republic Mut. Ins. Co.,* 87 N.E.2d 347, 349 (Ohio 1949). "Where a claim is fairly debatable, the insurer is entitled to refuse the claim as long as such refusal is premised on a genuine dispute over either the status of the law at the time of the denial or the facts giving rise to the claim."  *Tokles & Son, Inc. v. Midwestern Indemnity Co.*, 65 Ohio St.3d 621, 630 (Ohio 1992).  "As part of its duty, the insurer must 'assess claims after an appropriate and careful investigation' and reach conclusions as a result of 'the weighing of probabilities in a fair and honest way.'"  *Dorsey v. Campbell Hauling*, 2003 WL 21469132 at *4 (Ohio Ct. App. 10th Dist. June 26, 2003) *citing Motorist Mut. Ins. Co. v. Said*, 590 N.E.2d 1228 (Ohio 1992), *overruled on other grounds*, *Zoppo v. Homestead Ins. Co.*, 644 N.E.2d 397 (Ohio 1995).

Defendant argues that it is entitled to summary judgment on plaintiff's bad faith claim because it acted reasonably in denying the claims.  According to defendant, it hired a forensic

20

accountant, who concluded that plaintiff was hundreds of thousands of dollars in debt, suffered a "so-called million dollar loss" after being evicted, and had no appreciable income.  In addition, defendant points out the numerous instances in which plaintiff fraudulently submitted receipts, failed to cooperate, and failed to submit financial records.  In response, plaintiff submits the opinion of her expert witness, who avers that defendant acted in bad faith.  In addition, plaintiff argues that defendant should not have denied every aspect of plaintiff's claim.  Rather, if incorrect supporting documentation was not provided, then *part* of the claim should have been denied.  Plaintiff points out that defendant does not argue that the losses did not occur. Accordingly, it was defendant's obligation to assess each aspect of each claim.  In reply, defendant points out that plaintiff herself argues that there are "many" issues of material fact.  As such, by definition, coverage must be "fairly debatable."

Upon review, the Court finds that defendant is entitled to summary judgment.  As an initial matter, the Court notes that defendant correctly points out that the expert report provided by plaintiff is not authenticated.  *See*, Fed. R. Evid. 901.  Even if the Court considered the report, however, the expert does not opine as to whether coverage was fairly debatable.[9]  Defendant points out a number of instances in which plaintiff submitted or attempted to recover for losses allegedly suffered at other times.  In addition, defendant points out that certain receipts were altered or duplicated.  While plaintiff offers her own affidavit and explanation for the

---

[9]     Plaintiff's expert opined, for example, that his review of the documents "illustrates a typical situation where an insured is overwhelmed by a series of unrelated losses and struggles to comply with the request of the insurance company.  I do not see evidence of any intent on the part of [plaintiff] to defraud or misrepresent material facts."  These statements are not relevant to whether coverage was reasonably debatable.

21

circumstances, the Court finds that coverage for the claims is "fairly debatable" as a matter of law.  Moreover, plaintiff does not move for summary judgment on coverage and, instead argues that many issues of material fact exist.

The Court further rejects plaintiff's argument that defendant should cover each item for which there is no evidence that plaintiff made a material misrepresentation or engaged in fraudulent conduct.  By its very terms, the insurance policy is void if plaintiff "intentionally conceal[s] or misrepresent[s] any material facts or circumstances, before or after a loss."  Thus, because it is reasonably debatable whether plaintiff intentionally concealed or misrepresented material facts, defendant is not contractually obligated to cover any "individual item" under the policy.  Accordingly, defendant is entitled to summary judgment on plaintiff's bad faith claim.

**CONCLUSION**

For the foregoing reasons, Defendant Allstate Insurance Company's Motion for Summary Judgment is GRANTED in PART and DENIED in PART.  Summary judgment is GRANTED as to plaintiff's bad faith claim and DENIED as to the claim for coverage.

IT IS SO ORDERED.


 /s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge

Dated: 5/26/11

22